FILED

APR 20 2023 SK

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

APR 2 0 2023

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT MITZIGA, a/k/a "Bob,"<br>BASILIO CLAUSEN, a/k/a "Basil," and<br>LUMNI LIKOVSKI | No.<br><br>Violations: Title 18, United States Code, Sections 371 and 666 |

### COUNT ONE

23cr242
Judge John Kness
Magistrate Judge Valdez
Cat 2

The SPECIAL JANUARY 2023 GRAND JURY charges:

1. At times material to this indictment:

   a. Cook County was a local government located in the Northern District of Illinois that received more than $10,000 in federal benefits in calendar year 2017.

   b. The Cook County Assessor's Office ("CCAO") was a Cook County governmental office and an agency of Cook County. The CCAO was responsible for setting fair and accurate values for real estate within Cook County. To administer this task, the CCAO reassessed one-third of the properties located in the county each year. The assessed property values were used to calculate property taxes, with lower taxes resulting from lower property value assessments and higher taxes resulting from higher property value assessments. The CCAO had groups assigned to handle property value assessments for residential properties and other groups assigned to handle commercial properties.

2

c.  Once the taxpayer received the assessment made by the CCAO, he or she could challenge this assessment by, among other things, filing an appeal with the CCAO seeking to reduce the assessed value.

d.  Appeals of property value assessments for commercial properties were reviewed by employees in one of the commercial groups of the CCAO. An intake department within the CCAO docketed and randomly assigned appeals of commercial properties to employees in one of the commercial groups.

e.  A taxpayer appealing a property assessment with the CCAO could choose to be represented by an attorney for the appeal. Attorneys representing taxpayers for appeals typically charged fees for their services. During the appeal, a taxpayer could also withdraw the attorney representation and proceed without an attorney, which would enable the taxpayer to recover the entirety of any savings without paying attorneys' fees.

f.  Defendant BASILIO CLAUSEN was employed by the CCAO as a residential field inspector and was an agent of Cook County and the CCAO. As a residential field inspector, CLAUSEN examined residential properties to determine their characteristics for assessment purposes.

g.  Defendant LUMNI LIKOVSKI was employed by the CCAO as a director of taxpayer services and was an agent of Cook County and the CCAO.

h.  Lavdim Memisovski was employed by the CCAO as a commercial group leader and was an agent of Cook County and the CCAO. As a commercial group leader, Memisovski was one of the CCAO employees who assessed property values

for Cook County commercial properties and reviewed property tax appeals for commercial properties.

    i.  Defendant ROBERT MITZIGA was a founder and executive of Fence Masters, Inc. ("Fence Masters"), which had commercial property in Chicago Heights, Illinois, located within Cook County (the "Fence Masters Property"), and performed fence-installation work.

    j.  In or about 2017, the CCAO determined that the Fence Masters Property had an assessed value of approximately $83,891.

    k.  Individual A was an executive of Company A, which had commercial property in Dolton, Illinois, located within Cook County (the "Company A Properties"), and performed contractor and masonry work.

    l.  In or about 2017, the CCAO determined that the Company A Properties had a combined assessed value of approximately $179,924.

    m.  Golf Club A was a private golf club located in Bridgman, Michigan. MITZIGA and Individual A were members of Golf Club A.

    2.  Beginning in or around February 2017, and continuing through in or around November 2017, at Cook County, in the Northern District of Illinois, Eastern Division, and elsewhere,

>ROBERT MITZIGA, a/k/a "Bob,"
>BASILIO CLAUSEN, a/k/a "Basil," and
>LUMNI LIKOVSKI,

defendants herein, together with Individual A and Lavdim Memisovski, and others known and unknown to the grand jury, did knowingly conspire:

a. to corruptly solicit and demand, and to accept and agree to accept from another person things of value, namely, golf outings, food, and drinks, for the benefit of CLAUSEN, LIKOVSKI, and Memisovski, intending that CLAUSEN, LIKOVSKI, and Memisovski be influenced and rewarded in connection with any business, transaction, and series of transactions of Cook County involving things of value of $5,000 or more, namely, the reduction in the assessed value of the Fence Masters Property and the Company A Properties, in violation of Title 18, United States Code, Section 666(a)(1)(B); and

b. to corruptly give, offer, and agree to give things of value, namely golf outings, food, and drinks, for the benefit of CLAUSEN, LIKOVSKI, and Memisovski, with the intent to influence and reward CLAUSEN, LIKOVSKI, and Memisovski, in connection with any business, transaction, and series of transactions of Cook County involving things of value of $5,000 or more, namely, the reduction in the assessed value of the Fence Masters Property and the Company A Properties, in violation of Title 18, United States Code, Section 666(a)(2).

### Manner and Means of the Conspiracy

3. It was part of the conspiracy that, for the purpose of corruptly influencing and rewarding CLAUSEN, LIKOVSKI, and Memisovski in connection with the assessment of property values and the review of property tax appeals concerning the Fence Masters Property and the Company A Properties, MITZIGA and Individual A agreed to provide CLAUSEN, LIKOVSKI, and Memisovski with things of value, including rounds of golf at Golf Club A.

4. It was further part of the conspiracy that, in or around early 2017, MITZIGA told CLAUSEN that he and Individual A would invite and pay the cost of CLAUSEN and other CCAO employees to golf at Golf Club A if they would lower the property assessments for the Fence Masters Property and the Company A Properties.

5. It was further part of the conspiracy that, after the conversation between MITZIGA and CLAUSEN, CLAUSEN told LIKOVSKI and Memisovski that MITZIGA had offered to have CLAUSEN, LIKOVSKI, and Memisovski play golf at Golf Club A if they would reduce the property assessments for the Fence Masters Property and the Company A Properties.

6. It was further part of the conspiracy that CLAUSEN, LIKOVSKI and Memisovski agreed that LIKOVSKI and Memisovski would use their positions at the CCAO to reduce the property assessments for the Fence Masters Property and the Company A Properties.

7. It was further part of the conspiracy that CLAUSEN, LIKOVSKI, and Memisovski agreed to circumvent the regular system of random assignment of commercial property tax appeals by arranging the appeals for the Fence Masters Property and the Company A Properties to be directed specifically to Memisovski, knowing that Memisovski intended to lower property assessments for the Fence Masters Property and the Company A Properties.

8. It was further part of the conspiracy that LIKOVSKI agreed to use his position within CCAO to direct the appeals for the Fence Masters Property and the

Company A Properties to Memisovski so that Memiovksi could lower property assessments for the Fence Masters Property and the Company A Properties.

9. It was further part of the conspiracy that MITZIGA and Individual A provided property information about the Fence Masters Property and the Company A Properties to CLAUSEN.

10. It was further part of the conspiracy that CLAUSEN gave the appeal paperwork for the Fence Masters Property and the Company A Properties to LIKOVSKI. LIKOVSKI then had the appeals assigned and routed to Memisovski, intending that Memisovski would reduce the property tax assessments of the Fence Masters Property and the Company A Properties.

11. It was further part of the conspiracy that, because of their preexisting agreement with CLAUSEN, LIKOVSKI, and Memisovski to reduce the property tax assessments for the Fence Masters Property and the Company A Properties, Individual A submitted attorney representation withdrawal paperwork. By proceeding without attorney representation, MITZIGA and Individual A would receive the entire value of the assessment reductions done by Memisovski.

12. It was further part of the conspiracy that, for the purpose of corruptly influencing and rewarding CLAUSEN, LIKOVSKI, and Memisovski in connection with reducing the property assessments for the Fence Masters Property and the Company A Properties, MITZIGA arranged for CLAUSEN, LIKOVSKI, and Memisovski to golf at Golf Club A as guests of MITZIGA and Individual A on or about September 9, 2017 and on or about October 19, 2017. CLAUSEN, LIKOVSKI, and

Memisovski played golf and had food and drinks at Golf Club A on each occasion, intending to be influenced and rewarded for using LIKOVSKI and Memisovski's positions with the CCAO to reduce the property assessments for the Fence Masters Property and Company A Properties.

13. It was further part of the conspiracy that MITZIGA and Individual A split the cost of the two golf outings.

14. It was further part of the conspiracy that, on or about October 25, 2017, Memisovski reduced the assessed values for the Company A Properties from approximately $179,924 to $127,041.

15. It was further part of the conspiracy that, in or around November 2017, Memisovski reduced the assessed values for the Fence Masters Property from approximately $83,891 to $56,382.

16. It was further part of the conspiracy that CLAUSEN, LIKOVSKI, MITZIGA, Individual A, Memisovski, and their co-conspirators misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden, and attempted to misrepresent, conceal and hide acts done in furtherance of the conspiracy and the purpose of those acts.

### Overt Acts

17. It was further part of the conspiracy that CLAUSEN, LIKOVSKI, MITZIGA, Individual A, and Memisovski, and their co-conspirators, committed and caused to be committed one or more overt acts, within the Northern District of Illinois

7

and elsewhere, in furtherance of and to affect the objects of the conspiracy, including but not limited to the following:

    a. On or about September 9, 2017, CLAUSEN, LIKOVSKI, and Memisovski traveled to Golf Club A to play golf.

    b. On or about September 9, 2017, soon after the first round of golf at Golf Club A, but before Memisovski had reviewed the appeal forms for the Company A Properties, CLAUSEN called Individual A and left a voicemail stating that CLAUSEN, LIKOVSKI, and Memisovski enjoyed the round of golf and that Individual A's "appeal's not going to be an issue at all, doesn't look like."

    c. On or about October 5, 2017, MITZIGA caused a check to be made in the amount of approximately $1,094.20 payable to the order of Golf Club A that paid for the September 9, 2017 golf outing.

    d. On or about October 9, 2017, Individual A caused a check to be made in the amount of approximately $1,092.90 payable to the order of Golf Club A that paid for the September 9, 2017 golf outing.

    e. On or about October 12, 2017, MITZIGA caused to be sent an email to CLAUSEN that contained paperwork for the Fence Masters Property assessment appeal.

    f. On or about October 13, 2017, CLAUSEN forwarded to LIKOVSKI the email containing paperwork for the Fence Masters Property assessment appeal.

g. On or about October 19, 2017, CLAUSEN, LIKOVSKI, and Memisovski traveled to Golf Club A to play golf.

h. On or about October 25, 2017, Memisovski reduced the assessed values for the Company A Properties from approximately $179,924 to $127,041.

i. On or about November 3, 2017, MITZIGA caused a check to be made in the amount of approximately $672.58 payable to the order of Golf Club A that paid for the October 19, 2017 golf outing.

j. On or about November 6, 2017, Individual A caused a check to be made in the amount of approximately $559.94 payable to the order of Golf Club A that paid for the October 19, 2017 golf outing.

k. On or about November 9, 2017, during a call between CLAUSEN and Memisovski, CLAUSEN stated that he told MITZIGA that CLAUSEN "was supposed to go pick up the results for that appeal," and that MITZIGA responded, "Oh shit, make sure he [referring to Memisovski] gives me a better deal than he gets him [referring to Individual A]. I'm paying for more of this stuff."

l. In or about November 2017, Memisovski reduced the assessed value for the Fence Masters Property from approximately $83,891 to $56,382.

m. On or about November 17, 2017, Memisovski called CLAUSEN and discussed the Fence Masters Property assessment reduction being a "nice one" such that MITZIGA would be "happier" than Individual A.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

The SPECIAL JANUARY 2023 GRAND JURY further charges:

1. The allegations in paragraph 1 of the indictment are incorporated here.

2. Beginning in or around September 2017, and continuing through in or around November 2017, at Cook County, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT MITZIGA, a/k/a "Bob,"

defendant herein, did corruptly give, offer to give, and agree to give things of value, namely, golf outings, food, and drinks, for the benefit of CLAUSEN, LIKOVSKI, and Memisovski, intending for CLAUSEN, LIKOVSKI, and Memisovski to be influenced and rewarded in connection with any business, transaction, or series of transactions of Cook County, involving things of value of $5,000 or more, namely, a reduction in the assessed values of the Fence Master Property and the Company A Properties;

In violation of Title 18, United States Code, Section 666(a)(2).

## COUNT THREE

The SPECIAL JANUARY 2023 GRAND JURY further charges:

1. The allegations in paragraph 1 of the indictment are incorporated here.

2. Beginning in or around September 2017, and continuing through in or around November 2017, at Cook County, in the Northern District of Illinois, Eastern Division, and elsewhere,

## LUMNI LIKOVSKI,

defendant herein, did corruptly accept and agree to accept from another person things of value, namely, golf outings, food, and drinks, for the benefit of LIKOVSKI, CLAUSEN, and Memisovski, intending for CLAUSEN, LIKOVSKI, and Memisovski to be influenced and rewarded in connection with any business, transaction, or series of transactions of Cook County, involving things of value of $5,000 or more, namely, a reduction in the assessed values of the Fence Master Property and the Company A Properties;

In violation of Title 18, United States Code, Section 666(a)(1)(B).

A TRUE BILL:

_____
FOREPERSON

_____
Brian Hayes on behalf of the
ACTING UNITED STATES ATTORNEY