**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 CR 242** |
| | ) | |
| **ROBERT MITZIGA, BASILIO** | ) | |
| **CLAUSEN, and LUMNI LIKOVSKI** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In this order, the Court addresses the two remaining defendants' motions to dismiss the indictment. Each defendant has joined in the other's motion.

The superseding indictment in this case alleges that Cook County is a local government that received more than $10,000 in federal funds in 2017 and that the Cook County Assessor's Office (CCAO) is an agency of Cook County. The CCAO assesses property value for the purpose of determining property taxes owed. Defendants Basilio Clausen (who has pled guilty), Lumni Likovski, and Levdim Memisovski (who was not indicted) were employees of the CCAO. Defendant Robert Mitziga owned commercial properties in Cook County.

According to the indictment, in 2017, Mitziga and an unnamed individual referred to as "Individual A" agreed to corruptly provide golf outings, food, and drinks to Clausen, Likovski, and Memisovski in exchange for reduced property assessments on certain commercial properties, referred to as the "Fence Master property" and the "Company A properties."

Count 1 is a charge of conspiracy under 18 U.S.C. § 371. It alleges that the

defendants conspired to corruptly solicit and demand things of value for the benefit of

Clausen, Likovski, and Memisovski, intending them to be influenced and rewarded in

connection with the business of Cook County, specifically reductions in the assessed

value of the properties, in violation of 18 U.S.C. § 666(a)(1)(B).  Count 1 further alleges

that the defendants agreed to corruptly give and offer things of value to same three

CCAO employees with the intent to influence and reward them, in violation of 18 U.S.C.

§ 666(a)(2).  The indictment specifically alleges, in paragraphs 4 through 8 of Count 1,

that Mitziga told Clausen he would pay for a golf outing for Clausen and other CCAO

employees if they would reduce the assessed value of his properties; Clausen repeated

Mitziga's offer to Likovski and Memisovski; Clausen, Likovski, and Memisovski agreed

to Mitziga's proposal; and they then circumvented the CCAO's random assignment

system to arrange for the appeals on the properties to be directed to Memisovski.  The

indictment further alleges that the promised golf outings, paid for by Mitziga and

Individual A, were set up and held on two dates in early September and mid-October

2017 and that Memisovski then reduced the assessed values of the properties later in

October (for the Company A properties) and in November (for the Fence Masters

property).

Count 2 is a charge against Mitziga under section 666(a)(2).  It alleges that

Mitziga corruptly gave and offered things of value to Clausen, Likovski, and Memisovski,

intending for them to be influenced in connection with a reduction in the assessed value

of the properties.  Count 3 is a charge against Likovski under section 666(a)(1)(B).  It

alleges that he corruptly accepted and agreed to accept things of value intending to be

influenced in connection with the same assessment reductions.

Section 666(a)(1)(B) makes it an offense to, as an agent of a state or local government or any agency thereof:

> corruptly solicit[ ] or demand[ ] for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more[,]

if the government or agency receives federal funds in excess of $10,000 in a one-year period.  18 U.S.C. § 666(a)(1)(B).

Section 666(a)(2) makes it an offense to:

> corruptly give[ ], offer[ ], or agree[ ] to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more[,]

if the government or agency receives federal funds in excess of $10,000 in a one-year period.  18 U.S.C. § 666(a)(2).

## 1.      Likovski's motion to dismiss

Likovski's motion to dismiss contains a hodgepodge of arguments that are not all clearly delineated.  This is the Court's best effort at a summary, in more or less the order in which Likovski advances his various points:

- Section 666 only punishes an agent who fraudulently obtains property owned by his (governmental) organization, but the CCAO—for which Likovski worked—does not have control of any funds.

- Section 666 targets only acts that implicate the integrity of federal funds, which is not alleged and is not the case here.

- The County was not victimized by the fraud because lowering one property

3

owner's assessment does not affect the overall amount of property tax revenue the County collects.  (In other words, there was no loss.)

- Section 666 targets schemes to obtain property, but assessed valuations are not a property interest.

- The defendants are not agents of Cook County, which is required for a conviction under section 666.  The CCAO itself receives no federal funds.

- There is no allegation that the lowered assessments were less than could have been obtained absent the claimed conspiracy.

- Section 666 is unconstitutionally vague because it implicates the First Amendment right to petition the government and yet does not clearly define the conduct it proscribes.

The last of these arguments overlaps with Mitziga's motion to dismiss, so the Court will address that point separately, in the section of this order regarding Mitziga's motion.

       1.      **Control of funds**.  In arguing that the charge is deficient because the statute penalizes only those who obtain property owned by the government organization, Likovski relies on caselaw concerning a different subparagraph of section 666, specifically section 666(a)(1)(A), which prohibits obtaining a government organization's property by fraud.  That provision is not at issue here.  Likovski's argument is not consistent with the text of the parts of section 666 that are actually at issue in this case.

       2.      **Absence of impact on federal funds.**  Section 666(a)(1)(B) does not require the government to prove that the bribery or reward had an effect on federal funds.  *See Salinas v. United States*, 522 U.S. 52, 57 (1987) ("The prohibition is not

confined to a business or transaction which affects federal funds."). Section 666(a)(2) likewise does not require a nexus between the bribe and federal funds. *Sabri v. United States*, 541 U.S. 600, 605-06 (2004).

       **3.**      **Absence of loss to Cook County; absence of causation.** Likovski argues—correctly, at least as far as the Court understands the effect of assessed valuations—that lowering a particular property's assessment does not impact the overall property taxes owed to the County by taxpayers as a whole. Rather, it affects the proportion of those revenues paid by the particular property's owner. But that doesn't help Likovski here. The provisions in section 666 that are at issue in this case do not by their terms require proof of a loss to the government agency. Rather, they are focused on the giving of a thing of value to influence a government agent "in connection with any business" of the governmental agency involving $5,000 or more. That is adequately alleged here, as the assessments and reductions involved are alleged to have significantly exceeded that threshold. Looking at it in a different way, the proposition that it was other property owners who were victimized financially, and not the County itself, does not provide Likovski with a defense. *Cf. United States v. Lynch*, 699 F.2d 839, 845 (7th Cir. 1982) (involving a mail fraud charge for paying off one or more officials to obtain lower assessments).

       The Court overrules for the same reason Likovski's contention that there is no offense because the government cannot prove that the assessments in question would not have been lowered absence the alleged bribe or reward. That's just a variation on the argument that proof of an actual loss is required, which it is not for the particular statutory provisions at issue in this case.

4.     **Property interest.**  In arguing that the charge is deficient because the statute only reaches schemes to obtain property, Likovski again relies on the wrong subparagraph of the statute, specifically section 666(a)(1)(A).  As stated earlier, that provision is not at issue here.

5.     **Agency relationship.**  Likovski argues that the charges are deficient because neither he, nor Clausen, nor Memisovski was an agent of Cook County, the federal funds recipient.  That argument does not hold water under the plain language of the statute.

As indicated earlier, section 666(a)(1)(B) makes it a crime to, as "an agent of . . . a State [or] local . . . government, or any agency thereof," to corruptly solicit something of value, intending to be influenced (etc.); section 666(a)(2) makes it a crime to corruptly give or offer something of value, with the intent to influence or reward "an agent of . . . a State [or] local . . . government, or any agency thereof."  18 U.S.C. § 666(a)(1)(B), (2). Section 666(d)(1) defines an "agent" as a person authorized to act on behalf of a government, and section 666(d)(2) defines "government agency" to include departments, commissions, boards, and so on.  *Id.* § 666(d)(1), (2).  The CCAO is a "government agency" of Cook County within this definition, and Clausen, Likovski, and Memisovski are adequately alleged to be agents of that agency.  Thus to put it in the terms of section 666(a)(1)(B) and (b), they are alleged to be "agents" of a local "government, or . . . agency thereof" (i.e., agents of an agency of Cook County), and the "government *or* agency" (i.e.  Cook County) is alleged to have received the requisite amount of federal funds.  *See, e.g., United States v. Robinson*, 663 F.3d 265, 270 n.2 (7th Cir. 2011) (citing *United States v. Grossi*, 143 F.3d 348, 350 (7th Cir. 1998), for the

proposition that "it did not matter whether a township's general-assistance program, which was targeted by the bribe in question, had itself received more than $10,000 in federal funds."). *See also, e.g., United States v. Dawkins*, 999 F.3d 767, 783 (2d Cir. 2021).

**2.      Mitziga's motion to dismiss**

Mitziga argues that the relevant provisions of section 666 are unconstitutionally vague both on its face and as applied to him. Mitziga argues that the statute "fails to provide sufficient notice and invites arbitrary enforcement." Mitziga Mot. to Dismiss (dkt. no. 57) at 4. First, he contends that the term "corruptly" is insufficiently definite and does not have a commonly understood meaning. Second, he argues that because the statute has been interpreted differently by different courts of appeal, it is unconstitutionally ambiguous. Third, he argues that the statute is overly broad in that it reaches conduct protected by the First Amendment right to petition the government. Regarding the vague-as-applied challenge, Mitziga appears to contend that the problem is that one can't tell whether a *quid pro quo* is required *by the indictment*, which he seems to say makes the statute unconstitutionally vague as applied. Finally, Mitziga contends that the statutory terms "official act" and "in connection with" render section 666 vague and/or overly broad.

A statute is unconstitutionally vague on its face only if it is vague in all its applications. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982). That is not the case here. *See United States v. Hardin*, 874 F.3d 672, 677 (10th Cir. 2017); *United States v. Nelson*, 712 F.3d 498, 509 (11th Cir. 2013); *United States v.* Crozier, 987 F.2d 893, 900 (2d Cir. 1993). The Court notes in this

regard that section 666 on its face requires "corrupt" intent, and this is a term that has a generally accepted meaning. This requirement, which is a form of scienter, is sufficient to alleviate any vagueness concern. *See McFadden v. United States*, 576 U.S. 186, 197 (2015) ("[A] scienter requirement in a statute alleviate[s] vagueness concerns.") (internal quotation marks omitted); *Village of Hoffman Estates*, 455 U.S. at 499. *See also, e.g., United States v. Donagher*, 520 F. Supp. 3d 1034, 1053-54 (N.D. Ill. 2021); *United States v. Burke*, No. 19 CR 322, 2022 WL 1970189, at *19 (N.D. Ill. June 6, 2022).

The Court respectfully disagrees with Mitziga's contention that the term "corruptly" as used in section 666 is, or renders the statute, unconstitutionally vague. First of all, as the Supreme Court stated in connection with a different statute (and as Mitziga acknowledges, *see* Mitziga Mot. to Dismiss at 5 n.4), the "natural meaning" of "corruptly" is "clear"; the term is "normally associated with wrongful, immoral, depraved, or evil conduct." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005). As used in connection with soliciting or accepting a bribe under section 666(a)(1)(B), a person acts corruptly when he acts with the understanding that something of value is offered or given to influence or reward him in connection with his official duties. Similarly, as used in connection with paying a bribe under section 666(a)(2), a person acts corruptly when he acts with the intent that something of value is offered or given to influence or reward a government agent in connection with the agent's official duties. *See* Pattern Crim. Jury Instructions of the Seventh Circuit at 300, 304 (2023 ed.). This is not a vague term; it puts a reasonable person on adequate notice of the conduct the statute proscribes.

8

In addition, contrary to Mitziga's argument, there is nothing about use of the phrase "with the understanding" that lessens the government's burden as compared with the terms "with the knowledge" or "knowing." These are effectively synonymous terms that require the government to establish that the defendant's state of mind included contemporaneous awareness of the wrongful purpose of the payment. *See, e.g., United States v. Hawkins*, 777 F.3d 880, 881-82 (7th Cir. 2015) ("The judge . . . told the jury that a covered agent acts 'corruptly' if he takes money 'with the understanding that something of value is to be offered or given to reward of influence him in connection with his official duties. *In other words*, the 'corruption' entails the payee's knowledge that the payor expects to achieve a forbidden influence or deliver a forbidden reward. This definition of 'corruptly' comes from the Seventh Circuit's Pattern Criminal Jury Instructions (2012 ed.) for § 666 . . . .") (emphasis added).

Mitziga's contention that the existence of a circuit split over the interpretation of section 666 renders the statute unconstitutionally vague and/or ambiguous lacks merit. The fact that courts—even courts of appeal—differ over interpretation of a statute's terms does not (without more) make it unconstitutionally vague. *See, e.g., United States v. Morris*, 821 F.3d 877, 880 (7th Cir. 2016) (regarding the Armed Career Criminal Act), *abrogated on other grounds*, *Wooden v. United States*, 595 U.S. 360 (2022); *United States v. Kernell*, 667 F.3d 746, 754 (6th Cir. 2012) ("[T]he fact that different courts have interpreted a statute differently does not make the statute vague—if that were true, a circuit split over the interpretation of a criminal statute would by definition render the statute unconstitutional.").

The Court also notes, in this regard, that the disputation among the circuits over

9

the proper scope of section 666 mainly focuses on whether it reaches payment of a gratuity to a public official for acts he has already taken without a before-the-fact *quid pro quo*. *See, e.g., United States v. Snyder*, 71 F.4th 575, 579-80 (7th Cir. 2023) (discussing circuit split on this point). That may not even be an issue in this case, given the indictment's express allegations of a before-the-fact agreement. That said, the Court acknowledges that the government may not be required, as a matter of current section 666 law in this circuit, to prove the case that way. But the basis on which the government seeks to impose liability in this case is, under the circumstances, an appropriate subject for a bill of particulars or some other form of pretrial disclosure. The Court will return to this point later in this order.

The Court acknowledges that the Supreme Court recently granted *certiorari* in *Snyder*. Consistent with the discussion above, however, the particular question on which the Court granted review involves the "gratuity" prohibition under the statute, that is, the prohibition of an after-the-fact payment in recognition of an action the public official has already taken. The question presented by the petition for *certiorari* in *Snyder* is: "Whether section 666 criminalizes gratuities, i.e., payments in recognition of actions the official has already taken or committed to take, without any quid pro quo agreement to take those actions." *That* is the specific point on which there is a circuit split. As indicated earlier, there is a good chance that this will not even be an issue in this case given the tenor of the indictment's allegations (though, as indicated, this is a point that the Court intends to get nailed down in relatively short order).

Turning to Mitziga's First Amendment attack on the indictment, it is certainly arguable that section 666—at least the prohibition on gratuities—implicates First

Amendment-protected activity.  Consider, for example, a business owner who lobbies a legislator to support an enactment that benefits the business owner and then, after its adoption, give the legislator a large campaign contribution or (to bring it closer to this case) takes the legislator to his country club for golf, drinks, and dinner.  The circumstances could suggest that this amounted to a reward for an official act taken by the legislator and that both parties knew that at some level even without any express communications to that effect.  In theory at least, providing the golf outing or the campaign contribution could run afoul of section 666—at least as currently read by the Seventh Circuit—even without a before-the-fact understanding that a reward would be given for the legislator's support of the enactment.  The Court thus considers it likely that section 666, at least in some of its applications, implicates the First Amendment.[1]

That said, a facial challenge to a statute under the First Amendment may succeed only where the defendant establishes that the statute substantially criminalizes or suppresses protected speech in comparison to its legitimate scope.  *See, e.g., Bell v. Keating*, 697 F.3d 445, 452-53 (7th Cir. 2012); *see also New York v. Ferber*, 458 U.S. 747, 769 (1982).  That is not the case with this statute.  No serious argument can be made that a bribe, as traditionally understood, involves constitutionally protected activity, and the same would be true of an after-the-fact gratuity paid based on a before-the-fact offer, agreement, or understanding.  Mitziga's facial challenge therefore falls short.  The same is true of his as-applied challenge, given the indictment's allegations of an upfront understanding that something of value would be given in return for reduction

---

[1]  There is, of course, no First Amendment right to play golf, but campaign contributions are a different matter.

11

of property assessments.

Finally, Mitziga's contentions that the statutory terms "in connection with" and "official act" are unduly vague lacks merit. Mitziga cites no on-point authority supporting these arguments. These are terms that have commonly understood, and sufficiently clear meanings, and any uncertainty (particularly with regard to the "official act" requirement) may be cleared up, if need be, by a jury instruction.

## Conclusion

For the reasons stated above, the Court denies both defendants' motions to dismiss the indictment [43] [57] [72] [77]. As indicated in the body of this decision, the Court will require the government to provide, by way of a bill of particulars, disclosure regarding whether it intends to attempt to establish one or both defendants' guilt based on payment of a gratuity for actions that a public official had already taken or committed to take without a *quid pro quo* agreement to take those actions. This is, as indicated, the question on which the Supreme Court granted *certiorari* in *United States v. Snyder*. Advance disclosure of this information is important not only to permit the defendants to prepare for trial but also because the answer may bear on whether the trial of the case should await a decision by the Supreme Court in *Snyder*. The government is directed to make this disclosure by no later than February 23, 2024.

Date: February 1, 2024

_____
MATTHEW F. KENNELLY
United States District Judge

12